**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

RICHARD AMMAR CHICHAKLI,    )
                            )
      Plaintiff,            )
                            )
v.                          )     Case No. CIV-15-687-D
                            )
CHARLES E. SAMUELS, JR., Director,    )
Federal Bureau of Prisons, et al.,    )
                            )
      Defendants.           )


**REPORT AND RECOMMENDATION ON
DEFENDANT WYATT'S MOTION FOR SUMMARY JUDGMENT [DOC. NO. 89]
AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [DOC. NO. 91]**

      Before the Court are: (1) the Motion for Summary Judgment [Doc. No. 89] of Defendant

Shane Wyatt, in his official capacity (Defendant's Motion); and (2) Plaintiff's Cross-Motion for

Summary Judgment [Doc. No. 91] (Plaintiff's Cross-Motion).[1]  United States District Judge

Timothy D. DeGiusti has referred this matter for proposed findings and recommendations

consistent with 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons set forth below, it is

recommended that Defendant's Motion be granted in part and denied in part.  It is further

recommended that Plaintiff's Cross-Motion be denied.  Finally, it is recommended that Plaintiff's

claim for punitive damages be dismissed pursuant to 28 U.S.C. §§ 1915e(2)(B)(ii) and 1915A

(b)(1).

---

[1] By separate Report and Recommendation, the Court addresses the Motion for Summary
Judgment [Doc. No. 90] of Defendant Mike Lennier, in his official capacity.

# I. **Background**

At the time the Complaint was filed in this action, Plaintiff was a federal prisoner in the custody of the United States Bureau of Prisons (BOP).[2] Plaintiff's claims arise from his temporary detainment at the Grady County Jail[3] from February 10, 2015 through February 24, 2015, while in transit between BOP facilities.[4]

Plaintiff seeks monetary relief pursuant to 42 U.S.C. § 1983 alleging a violation of his First Amendment right to religious exercise. Plaintiff alleges that during his detention at the Grady County Jail, he was denied kosher meals and/or the meals provided to him did not comply with the requirements of a kosher diet. He also alleges that while he was detained at the Grady County Jail, he was not provided access to his religious materials and officials at the jail interfered with his ability to engage in his religious practices.

The sole remaining Defendants in this action are Shane Wyatt, Director, Grady County Criminal Justice Authority; and Mike Lennier, Grady County Commissioner, Grady County District 2, State of Oklahoma. Plaintiff sues these Defendants in their official capacities. The Court, therefore, has construed Plaintiff's claims as claims against the Grady County Criminal

---

[2] On March 15, 2017, Plaintiff notified the Court that he had been released to home confinement as of March 10, 2017. *See* Notice of Change of Address [Doc. No. 115]. Additionally, the Court takes judicial notice of the BOP's inmate locater service, available at www.bop.gov/inmateloc/, which identifies Plaintiff's release date as June 9, 2017, indicating Plaintiff is no longer in custody.

[3] Defendant interchangeably refers to the jail facility as the "Grady County Law Enforcement Center" and the "Grady County Jail." *See* Gerlach Affidavit [Doc. No. 90-1], ¶ 2. The Court references the facility as the Grady County Jail.

[4] Plaintiff was detained at the Grady County Jail pursuant to a contractual agreement with the federal government. *See* Gerlach Affidavit, ¶ 4; *see also* Detention Services Intergovernmental Agreement [Doc. No. 90-2].

Justice Authority and Grady County, State of Oklahoma.  *See* Order [Doc. No. 61] at pp. 6-8; *see also* Order [Doc. No. 65] at pp. 4-5.

Additionally, Defendant's submissions establish that Jim Gerlach currently serves as Jail Administrator of the Grady County Jail, a position previously occupied by Shane Wyatt. Therefore, pursuant to Fed. R. Civ. P. 25(d), the Court Clerk is directed to substitute Jim Gerlach in place of Shane Wyatt.  All references in this Report and Recommendation to the moving Defendant will be to Jim Gerlach in his official capacity.

## II.     Grounds for Summary Judgment Raised by the Parties

Defendant moves for summary judgment raising the affirmative defense that Plaintiff has failed to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  Defendant also claims § 1997e(e) of the PLRA, a provision limiting the recovery of damages for mental or emotional injury suffered by a prisoner, bars Plaintiff's claims. Alternatively, Defendant moves for summary judgment on Plaintiff's § 1983 claims alleging a violation of his First Amendment rights on the following grounds: (1) Plaintiff has failed to demonstrate the sincerity of his religious beliefs; (2) Plaintiff has failed to demonstrate a substantial burden on his religious exercise rights; and (3) Plaintiff has failed to demonstrate the violation of his religious exercise rights resulted from an unconstitutional policy or custom.

Plaintiff moves for summary judgment on his § 1983 claims contending he has established a violation of his First Amendment rights.  Plaintiff separately moves for summary judgment pursuant to the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1 *et seq*.  But Plaintiff did not bring a claim pursuant to RLUIPA in his Complaint and

has never sought leave to amend the Complaint to assert such a claim.[5]  Thus, the Court limits review of Plaintiff's summary judgment motion to the § 1983 claims alleging violations of his First Amendment rights.

Plaintiff's summary judgment motion is not supported by any factual materials distinct from those submitted by Defendant in support of his motion.  Plaintiff states that the purportedly kosher food served to him was not prepared under rabbinic supervision, that the use of kosher ingredients does not guarantee the production of kosher food and that he was not served any "certified kosher" pre-packaged meals.  He further contends prison officials fraudulently labeled his food as kosher.  Plaintiff also claims he was not allowed to pray, access his religious materials or have his Hebrew Bible.

For the reasons discussed below, the Court finds genuine disputes exist as to material facts at issue in this case, precluding summary judgment in favor of Defendants under the provisions of the PLRA, 42 U.S.C. §§ 1997e(a) and (e).  The Court further finds genuine disputes exist as to material facts at issue in this case precluding summary judgment in favor of either Defendant or Plaintiff with respect to Plaintiff's § 1983 claim alleging a First Amendment violation of his free exercise rights with respect to a kosher diet.  However, the Court finds Defendant is entitled to judgment as a matter of law as to Plaintiff's § 1983 claim alleging a First Amendment violation of his free exercise rights with respect to Plaintiff's access to religious materials and ability to engage in religious practices.

---

[5] In the Complaint, Plaintiff alleged a claim for monetary relief against the Federal Defendants in their official capacities pursuant to the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1.  The Court dismissed the RFRA claim because RFRA does not authorize suits for money damages against officers in their official capacities.  *See* R&R [Doc. No. 55] at pp. 10-11; Order Adopting [Doc. No. 61] at pp. 5-6.

### III.    <u>Summary Judgment Standard</u>

Under Rule 56 of the Federal Rules of Civil Procedure, the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Once a moving party shows it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party to point out the specific facts that create disputed factual issues. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party must present some evidence, other than its initial pleadings, to show that there is more than just a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Celotex,* 477 U.S. at 324 ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by [other evidence] designate 'specific facts showing that there is a genuine issue for trial.'") (*quoting* Fed. R. Civ. P. 56(e)).

To defeat a motion for summary judgment, evidence must be based on more than mere speculation, conjecture or surmise. *Rice v. United States*, 166 F.3d 1088, 1091-1092 (10th Cir. 1999). Moreover, the existence of a factual issue does not preclude entry of summary judgment where there is no evidence to support a dispute on that issue or the evidence is so one-sided that no reasonable juror could find for the other side. *True v. United States*, 190 F.3d 1165, 1177 (10th Cir. 1999). Conclusory allegations will not create a genuine issue of material fact defeating a summary judgment motion. *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995). In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

**IV.** **Analysis of Claims for which Summary Judgment is Sought**

    **A.** **Defendant's Affirmative Defense of Exhaustion of Administrative Remedies**

Defendant raises the affirmative defense that Plaintiff has not exhausted administrative remedies under 42 U.S.C. § 1997e(a). Defendant raises this affirmative defense as his next-to-last proposition of his dispositive motion in rather perfunctory fashion. *See* Def.'s Mot. at pp. 28-32.[6] The Court must address this affirmative defense first, however, before proceeding to the merits of Plaintiff's claims. *See Fitzgerald v. Corrs. Corp. of Am.*, 403 F.3d 1134, 1141-42 (10th Cir. 2005) (compliance with § 1997e(a)'s exhaustion requirement is a "precondition to bringing litigation" and, therefore, "[e]xcept in limited circumstances, the plain language of the statutory text does not allow the court to skip ahead to the merits of the suit").

    **1.** **Law Governing Exhaustion of Administrative Remedies**

Section 1997e(a)'s exhaustion requirement is mandatory and an unexhausted claim cannot be brought in court. *Jones v. Bock*, 549 U.S. 199, 211 (2007) (*citing Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Exhaustion is an affirmative defense and a defendant bears the burden of proof. *See Jones*, 549 U.S. at 216; *see also Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007) ("We . . . hold that the burden of proof for the exhaustion of administrative remedies in a suit governed by [42 U.S.C. § 1997e(a)] lies with the defendant."). If the defendant demonstrates the absence of a disputed issue of material fact on the issue of exhaustion, the burden shifts to the plaintiff to "demonstrate with specificity the existence of a disputed material fact" or "show that remedies were unavailable to him as a result of" the actions of prison officials. *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997); *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011).

---

[6] Citations to the parties' submissions reference the Court's ECF pagination.

Section 1997e(a) requires "proper exhaustion," that is, full compliance with the prison's grievance procedure. *See Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006). Accordingly, "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a . . . claim under [the] PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

But exhaustion is only required if administrative remedies are available. *Ross v. Blake*, -- U.S. --, 136 S.Ct. 1850, 1859 (2016); *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little*, 607 F.3d at 1250 (citation omitted).

### 2. Factual Record Regarding Defendant's Assertion of the Affirmative Defense of Exhaustion of Administrative Remedies

Defendant relies exclusively on Plaintiff's purported failure to comply with the "formal grievance procedure in place at the Grady County Jail pursuant to the Inmate Handbook and the Policy and Procedure Manual." *See* Def.'s Mot. at pp. 30-31. Citing Plaintiff's deposition testimony, Defendant states: "[e]ven [Plaintiff] does not know whether he ever submitted a formal Grievance [pursuant to this policy]." *Id*. at p. 31. Defendant also relies on the Affidavit of Jim Gerlach, the Jail Administrator, in which he states: "After a thorough check of [Plaintiff's] Jail file, I see no evidence that [Plaintiff] ever submitted a formal Grievance pursuant to the Inmate Handbook and the Policy and Procedure Manual." *See* Def.'s Mot. at p. 17, ¶ 54 (*citing* Gerlach Affidavit, ¶ 32).

But Defendant's exhaustion defense is defeated by his own summary judgment submissions. Defendant disingenuously relies on the grievance procedures of the Grady County Jail and limits the exhaustion defense to Plaintiff's failure to submit grievances pursuant to those

procedures. However, Defendant acknowledges elsewhere in his Motion that, as a federal inmate, Plaintiff was required to comply with a different procedure:

> When a federal detainee has an issue or concern at the Grady County Jail, they [sic] are *required* to fill out a Federal Detainee's Request for Services, which is provided to Captain/Federal Liaison Forsythe. Forsythe will generally respond to Federal Detainee's Requests for Services as soon as practicable.

*See* Def.'s Mot. at p. 12, ¶ 31 (emphasis added).

Defendant concedes that Plaintiff filled out paperwork and submitted it to Federal Liaison Forsythe. *See* Gerlach Affidavit, ¶ 15; *see also* Forsythe Affidavit [Doc. No. 89-3], ¶ 12. Moreover, the record shows that after meeting with Federal Liaison Forsythe, Plaintiff received some relief in response thereto. He was provided the prayer materials from his property box and allowed to pray daily. *See* Forsythe Affidavit, ¶¶ 12-16. Also, a mistake on the book-in sheet showing Plaintiff as "allergic to Kosher food" was "rectified" and, according to Federal Liaison Forsythe, thereafter he "made sure that [Plaintiff] received kosher meals at all times." *Id*. at ¶17. It appears that Plaintiff also complained to Federal Liaison Forsythe regarding the kosher meals served to him. *See* Forsythe Affidavit, ¶ 19. In somewhat elusive fashion, Federal Liaison Forsythe states that he received "paperwork" from Plaintiff regarding his request to use prayer materials, but expressly references a "Request to Staff Form" when addressing Plaintiff's complaints related to the kosher meal issue. *Compare* Forsythe Affidavit, ¶ 12 *with* ¶¶ 18-19. Federal Liaison Forsythe does not state whether Plaintiff, as a federal inmate, was required to comply with the Grady County Jail's grievance procedures *in addition to* filling out the Federal Detainee's Request for Services form. Nor do Defendant's other summary judgment submissions address this issue. Therefore, Defendant has not shown the absence of disputed issues of material fact.

Also, it is unclear whether Plaintiff had sufficient time to further grieve issues relating to kosher food served to him. It appears Plaintiff may have obtained a "Request to Staff Form" on or about February 21, 2015 and thereafter, Federal Liaison Forsythe responded, but it is unclear what procedures governed this process and whether Plaintiff could have obtained further review before being transported from the Grady County Jail on February 24, 2015. Notably, Defendant has not submitted any of the "paperwork" referenced in the affidavits of Gerlach and Forsythe. On the present record, Defendant's cursory (and selective) presentation of facts is insufficient to meet his burden of establishing, as a matter of law, that Defendant is entitled to summary judgment on grounds Plaintiff did not exhaust administrative remedies.[7]

### B.     The PLRA's Limitation on Recovery

Next, Defendant moves for summary judgment on grounds that "the only physical damages [Plaintiff] claims in this lawsuit are alleged loss of weight based on his own decision to secretly throw out the Kosher food he was provided." *See* Def.'s Mot. at p. 31. Defendant contends that

---

[7] Defendant attaches to the summary judgment motion excerpts of the "Policy and Procedure Manual" (Manual) at the Grady County Jail. *See* Doc. Nos. 89-16 through 89-19. The excerpts indicate the Manual is comprised of well over 100 pages although the summary judgment submissions are limited to approximately 6 pages. Defendant states in his affidavit that: "[t]he policies and procedures attached were the policies in effect as of February 2015 at the Grady County Jail." *See* Gerlach Affidavit, ¶ 37. The summary judgment record, however, does not identify the individual(s) and/or entity responsible for the Manual or how the attached procedures are disseminated to persons employed at, or incarcerated in, the Grady County Jail. Defendant appears to rely on the mere existence of the excerpted policies and procedures as supporting summary judgment. Defendant's lack of evidence to demonstrate any manner of dissemination or implementation of the policies is perplexing. Additionally, the Court notes that the Manual sets forth a 72-hour time limit for submitting a grievance. *See* Manual [Doc. No. 89-16]. Conversely, the Inmate Handbook sets forth a fifteen-day time limit. *See* Inmate Handbook [Doc. No. 89-15] at p. 9. Even if Plaintiff were required to additionally follow the grievance procedures of the Grady County Jail – a factual matter not established on the present record – the conflicting procedures maintained by the Grady County Jail further call into question the availability of administrative remedies.

"[w]ithout any evidence of physical injury, Plaintiff simply cannot maintain a claim for violations of his constitutional rights under the PLRA, and summary judgment should be granted for this additional reason." *Id*. at pp. 31-32.

The PLRA precludes damages "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). "The statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional." *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001). But § 1997e(e) does not preclude the recovery of nominal damages and, as the Tenth Circuit has observed, "the rule seems to be that an award of nominal damages is mandatory upon a finding of a constitutional violation." *Id*. at 879.[8]

The Court finds premature Defendant's request for summary judgment pursuant to § 1997e(e). Generally, weight loss does not suffice to establish the physical injury requirement under § 1997e(e) where the weight loss is only a physical manifestation of mental or emotional injuries. *See, e.g., Hughes v. Colorado Dep't of Corr*., 594 F. Supp.2d 1226, 1238 (D. Colo. 2009) (A prisoner "cannot satisfy Section 1997e(e) by alleging only that he suffered from the physical manifestations of mental or emotional injuries."); *see also Davis v. Dist. of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (section 1997e(e) "preclude[s] reliance on the somatic manifestations of emotional distress"). Here, however, Plaintiff's alleged weight loss is not the result of his mental or emotional distress but instead due to the deprivation of food that conformed to his religious beliefs. Moreover, if Plaintiff prevails in establishing a violation of his First Amendment

---

[8] Similarly, § 1997e(e) does not preclude an award of punitive damages. *Id*. at 880-881. "[A]s a general rule, punitive damages may be recovered for constitutional violations without a showing of compensable injury." *Id*. at 880. For reasons discussed infra, however, Plaintiff's claim for punitive damages should be dismissed on alternative grounds.

rights, he may be entitled to nominal damages. Under these circumstances, Defendant has not established as a matter of law that § 1997e(e) precludes Plaintiff's right to recovery.

### C. Plaintiff's Section 1983 Claims for Violations of his First Amendment Free Exercise Rights

Defendant moves for summary judgment on Plaintiff's § 1983 claims, alleging Plaintiff has failed to establish either the sincerity of his religious beliefs or a substantial burden on his religious exercise and, therefore, cannot establish a First Amendment violation sufficient to support liability under § 1983.

#### 1. Governing Law

"Under the First . . . Amendment[ ], inmates are entitled to the reasonable opportunity to pursue their sincerely-held religious beliefs." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). And, it is well-established that "prisoners have a constitutional right to a diet conforming to their religious beliefs." *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002) (finding prison officials' denial of Jewish prisoner's request for a kosher diet stated a First Amendment free exercise claim under § 1983). To establish a First Amendment violation, Plaintiff bears the initial burden of showing that a prison regulation "substantially burdened . . . sincerely-held religious beliefs." *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007); *see also Searles v. Dechant*, 393 F.3d 1126, 1131 (10th Cir. 2004) (as a threshold matter, the court must determine whether a plaintiff's beliefs are "sincerely held" and "religious in nature").[9]

_____

[9] Once a plaintiff meets this initial burden, a defendant must then demonstrate the prison regulation is reasonably related to legitimate penological interests. *Kay v. Bemis*, 500 F.3d 1214, 1218-19 (10th Cir. 2007) (applying factors set forth in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987)). Defendant has not identified any legitimate penological interests in moving for summary judgment.

### a.    Sincerity of Plaintiff's Religious Beliefs

"Whether religious beliefs are sincerely held is a question of fact." *Mosier v. Maynard*, 937 F.2d 1521, 1526 (10th Cir. 1991). To establish the sincerity of his belief, Plaintiff need only show that he genuinely and sincerely believes eating a kosher diet is consistent with his faith. *See Williams v. Wilkinson*, 645 F. App'x 692, 704 (10th Cir. 2016) ("'A prisoner's belief in religious dietary practices is constitutionally protected if the belief is 'genuine and sincere,' even if such dietary practices are not doctrinally 'required' by the prisoner's religion.'") (*quoting Kay*, 500 F.3d at 1219; additional citations omitted). Plaintiff is not required to show that "a kosher diet is *necessary* to the practice of [his faith]." *Id.* (*citing Kay*, 500 F.3d at 1220). These same tenets hold true to Plaintiff's beliefs regarding the need for his prayer materials and the ability to engage in prayer practices.

The factual record establishes that Plaintiff had been approved by the BOP for a kosher diet and that he had received kosher meals "since Day 1." Pl.'s Dep. [Doc. No. 89-5] at p. 20: 21-24. Further, upon his arrival at the Grady County Jail, Plaintiff notified prison officials that he required a kosher diet and he was approved to receive that diet. *See* Forsythe Affidavit, ¶ 17. Plaintiff testified during his deposition that he refused to eat the meals provided to him during his incarceration at the Grady County Jail due to his religious beliefs because the meals were not actually kosher meals. *See* Pl.'s Dep. at p. 28: 17-25; p. 29: 1-18; p. 37: 7-19; *see also* Compl. at pp. 5-6, ¶¶ 26-27, 29-31.

Additionally, Plaintiff's prayer materials were sent with him by the BOP, he requested use of those materials during his detention at the Grady County Jail so that he could pray, and his request was granted. *See* Forsythe Affidavit, ¶¶ 7, 12-16. These facts further demonstrate the sincerity of Plaintiff's religious beliefs.

Defendant nonetheless relies on Plaintiff's familial history and relations, countries in which he has lived prior to his incarceration, and "assumed identities" of Plaintiff prior to his incarceration, as undisputed evidence that Plaintiff's beliefs are not sincerely held. *See* Def.'s Mot. at pp. 9-11, ¶¶ 8-24. Defendant does not address Plaintiff's conduct since incarceration, including his conduct at the Grady County Jail, demonstrating the sincerity of Plaintiff's religious beliefs. And, the record is void of any evidence that any prison official at the Grady County Jail questioned the sincerity of his beliefs.

At core, Defendant's challenge to the sincerity of Plaintiff's beliefs centers on credibility issues, the resolution of which is not proper at this stage in the proceedings. *See Kay*, 500 F.3d at 1219 ("The inquiry into the sincerity of a free-exercise plaintiff's religious beliefs is almost exclusively a credibility assessment, and therefore the issue of sincerity can rarely be determined on summary judgment, let alone a motion to dismiss." (internal quotation marks and ellipsis omitted)). Questions of fact, therefore, preclude summary judgment on this threshold issue.

### b.    Substantial Burden[10]

#### 1.    Meals Served to Plaintiff

If, as Plaintiff alleges, the meals provided to him at the Grady County Jail were not kosher, Plaintiff faced a Hobson's choice: "either he eats a non-[kosher] diet in violation of his sincerely held beliefs, or he does not eat." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1317 (10th Cir. 2010). Such a Hobson's choice demonstrates a substantial burden sufficient to survive summary

---

[10] Even if Plaintiff's pro se Complaint plausibly supports a claim under RLUIPA, *see* discussion supra at pp. 3-4, the Court's discussion of "substantial burden"' for purposes of Plaintiff's First Amendment free-exercise claim applies equally to any claim brought under RLUIPA. *See McKinley v. Maddox*, 493 F. App'x 928, 933 n. 4 (10th Cir. 2012).

judgment. *Id.* As the following discussion demonstrates, questions of fact exist as to whether the meals provided to Plaintiff were kosher, precluding summary judgment.

Plaintiff claims the meals at the Grady County Jail were not certified as kosher, i.e., "[n]one of the meals was certified by a[] Rabbinic authority, none of the meals was sealed, none of the meals have identifiable item as Kosher." *See, e.g.*, Pl.'s Dep. at p. 31:14-20.[11] He further claims the manner in which the meals were prepared and served did not meet kosher requirements.

The record includes a rabbinic opinion of Rabbi Y. Weiss of The Aleph Institute [Doc. No. 49] as to what constitutes kosher food acceptable in the prison environment.[12] According to Rabbi Weiss, "Jewish inmates cannot eat any food that is prepared or cooked in a prison kitchen" because "the food prepared and cooked in a prison kitchen is cooked in a non-Kosher environment."[13] Additionally, kosher food requires "rabbinic supervision" over its preparation. Due to practical difficulties with these requirements, Rabbi Weiss opines that most prisons provide "pre-packaged

---

[11] Plaintiff further alleges that the food was identical to the food being served to inmates not on a kosher diet. For example, if Plaintiff received a plate of rice and beans with a "kosher" label, the meal served to the other prisoners at that same time consisted of rice and beans – creating a reasonable inference that Plaintiff did not receive kosher meals. *See* Compl. at p. 5, ¶ 25; *see also* Pl.'s Dep. at pp. 26:24-25 – 27:1-19.

[12] "The Aleph Institute assists Jewish prisoners with, among other things, kosher food issues." *Nelson v. Walsh*, No. 16-10405, 2017 WL 1212836 at *5 (E.D. Mich. Feb. 17, 2017) (unpublished op.) (*citing* http://www.aleph-institute.org/prisoner-services.html). Although the opinion of Rabbi Weiss is not attached to Plaintiff's summary judgment submissions, the Court may consider this opinion. *See* Fed. R. Civ. P. 56(c)(3). The Court previously granted Plaintiff leave to submit the opinion as a supplement to his response to Defendant's Motion to Dismiss. *See* Order [Doc. No. 48].

[13] Consistent with Rabbi Weiss's opinion, the Tenth Circuit has recognized that "[k]osher laws govern not only the ingredients (both animal and vegetable), but the source, storage, and preparation of those ingredients, and the service of meals." *Beerheide*, 286 F.3d at 1187. Thus, "[a] vegetarian meal prepared in a non-kosher kitchen is not kosher." *Id.*

Kosher meals" that can be "warmed in any microwave or oven as long as the double seal remains intact and is not broken."

The parties do not dispute the manner in which the meals were served to Plaintiff, i.e., the food was placed on Styrofoam plates and wrapped with cellophane. The food was not served in any pre-packaged container that bore a "certified" insignia. Indeed, Defendant acknowledges that kosher meals are "usually on a styrofoam plate, with styrofoam cups and cellophane wrap" and "do[] not necessarily have the Kosher certification symbols directly on the meal that the inmate would see." *See* Gerlach Affidavit, ¶ 26; Rico Affidavit [Doc. No. 89-11], ¶ 8.

Nonetheless, Defendant maintains that "[a]ll food items *included in* Kosher meals are certified kosher and approved by rabbinical authorities." *See* Gerlach Affidavit, ¶ 24 (emphasis added); *see also* Rico Affidavit, ¶ 6 ("As of February, 2015, all food items included in Kosher meals were certified Kosher and approved by rabbinical authorities."). As support, Defendant submits a document entitled "Kashruth Certification" signed by Rabbi Green Blatt of Memphis, Tennessee. *See* Kashruth Certification [Doc. No. 89-14]. The certification lists "products produced by GFI-Global Food Industries" that purportedly conform to "Jewish Dietary laws." Defendant fails to identify Rabbi Blatt's association with GFI-Global Food Industries, or the basis for his certification, i.e., for what purpose the certification was given. The certification is undated, but states that it is "valid until January 31, 2016." Thus, it is unclear what period of time the certification covers.

Moreover, Defendant does not provide any evidence that the "products produced by GFI-Global Food Industries" are products served at the Grady County Jail. Indeed, no evidence before the Court ties GFI-Global Food Industries to the Grady County Jail. To the contrary, Defendant states that an entity known as Trinity Services Group, formerly known as Compass Service Group

USA, provided (and continues to provide) the religious meals at the Grady County Jail.  *See* Gerlach Affidavit, ¶ 21; Rico Affidavit, ¶ 3.

Defendant also submits photographs of packages of food marked as "kosher."  Ms. Rico states that the "photographs were taken in the kitchen of the Grady County Jail, and show both "meals provided to the inmates, as well as the boxes from which ingredients come."  Rico Affidavit, ¶ 9.  She further states: "[c]learly visible on the photographs are the Kosher certifications."  *Id*.  But Ms. Rico does not state *when* the photographs of the packages of food were taken, or by whom they were taken.  Thus, there is no evidence before the Court that the food depicted in the photographs is the same as that served during Plaintiff's period of incarceration at the Grady County Jail.[14]

As depicted in the photographs, the labels on the packages of food include the names of different manufacturing and/or distribution companies including "Labruite Meals" located in Lakewood, New Jersey, "Tov Industries, LLC located in Louisville, Kentucky, "Food Concepts" located in Lebanon, Tennessee and "MealMart" located in Maspeth, New York.  Defendant fails to identify the relationship, if any, between GFI-Global Food Industries, and the companies identified on the food labels.  Similarly, Defendant does not provide any evidence that the packaged food depicted in the photographs is provided through Trinity Services Group.

---

[14] Additionally, Ms. Rico did not become the Food Services Director until March 2015, *after* Plaintiff was no longer incarcerated at the Grady County Jail.  *See* Rico Affidavit at p. 1, ¶ 2.  Ms. Rico states that she was "working at the facility during the entire time that Richard Chichakli was housed at the Grady County Jail," *see id*., ¶ 3, but she does not state *in what capacity* she was working at the facility.  Thus it is not clear that she worked in a capacity related to food services. As such, the summary judgment record fails to establish that she has personal knowledge of the facts alleged in her affidavit.

Although Ms. Rico states that Trinity Services Group provides "religious" meals at the Grady County Jail, no affidavit or other evidentiary materials from Trinity Services Group has been provided with respect to their provision of religious meals at the Grady County Jail.[15] For instance, no representative of Trinity Services Group has provided an affidavit as to the manner in which the packaged food should be served to maintain its kosher status. The record includes a "Trinity Services Group Weekly Cycle Menu" [Doc. No. 89-13] but the menu is undated and no evidence otherwise establishes this menu was in effect during Plaintiff's period of incarceration at the Grady County Jail.[16] Thus, as presented, Defendant's summary judgment evidence is insufficient to support the assertion that "all food items included in Kosher meals were certified Kosher and approved by rabbinical authorities."[17]

Finally, Defendant's own summary judgment evidence supports a showing that at least one other federal inmate incarcerated at the Grady County jail during the same period of time as Plaintiff complained that the food served to her was not kosher. A female inmate identified herself as Jewish and complained to the medical unit that she could not eat off the "unclean plate [and] cups" on which her food was served and that she could not eat the food "cooked in [the prison's] unclean pots." *See* Incidents for Offender [Doc. No. 89-20]. Although prison officials noted in

---

[15] According to both Ms. Rico and Mr. Gerlach, Ms. Rico's predecessor was employed by Trinity Services Group and not by the Grady County Jail. *See* Rico Affidavit, ¶ 4; Gerlach Affidavit, ¶ 22.

[16] The Special Report includes a "Manual Food Services Agreement" (Agreement) between Compass Group USA and Grady County Jail. *See* Agreement [Doc. No. 34-7]. That Agreement provides that "Compass shall supply religious, diet, and other specialty meals *as directed and approved by Client*." *Id.* at p. 1, ¶ 2.1 (emphasis added).

[17] Defendant also states that "[s]eparate utensils and separate cooking materials were also used in the preparation of Kosher Meals at the Grady County Jail." Gerlach Affidavit, ¶ 25; Rico Affidavit, ¶ 7. Although Plaintiff has not disputed these facts, they are, standing alone, insufficient to establish the food served to Plaintiff met kosher requirements.

the inmate's records that the kitchen had "one pot" that was "only used for Jewish cooking," the pot had been "blessed" and the kitchen manager advised "there were "special items in the kitchen . . . designated for Jewish cooking," that evidence fails to establish, as a matter of law, that the food served to Plaintiff was kosher.

Accordingly, questions of fact exist with respect to whether the food served to Plaintiff at the Grady County Jail complied with Plaintiff's religious requirements. Summary judgment, therefore, should be denied.

Defendant further seeks summary judgment on grounds Plaintiff fails to show "that there is any unconstitutional policy or custom at issue here." *See* Def.'s Mot. at p. 34. As support, Defendant references "the Policies and Procedures of the Grady County Jail" which state that "requests for special diets for religious reasons shall be forwarded to the kitchen supervisor and reasonable provisions will be made for such diets." *Id*. at pp. 34-35; *see also* Policy 6.10 on Food Service [Doc. No. 89-17].

As discussed previously, Defendant's submission of the excerpted provisions of the Grady County Jail's policies and procedures, untethered from any discussion of the implementation and/or dissemination of those policies and procedures, does nothing to advance his legal argument. Defendant concedes that he has final policy-making authority at the Grady County Jail, including the period of time during which Plaintiff was incarcerated there. *See* Gerlach Affidavit, ¶¶ 2-3. ("I have been the Jail Administrator of the Gray [sic] County Law Enforcement Center ("Grady County Jail") since May 26, 2014 . . . [and] [a]s the Jail Administrator of the Grady County Jail, I am authorized and directed to have charge of the Grady County Jail and all persons confined by law therein.").

In moving for summary judgment, Defendant does not claim any alleged denial of kosher meals to Plaintiff constitutes an isolated incident or that a failure to provide kosher meals to Plaintiff was the result of the negligence of prison staff. *See Gallagher*, 587 F.3d at 1070 (isolated acts of negligence are insufficient to establish the violation of an inmate's First Amendment right to free exercise of religion). Instead, Defendant maintains that "[a]ll food items included in Kosher meals are certified Kosher and approved by rabbinical authorities." Gerlach Affidavit, ¶ 24. And Defendant leaves substantially unaddressed issues relating to the manner in which the food was prepared and served.

Under these circumstances, whether an unconstitutional policy or practice existed at the Grady County Jail is inextricably intertwined with the issue of whether the meals served to Plaintiff were kosher. Because questions of fact remain as to whether the food served at the Grady County Jail met kosher requirements, as represented by jail officials, it necessarily follows that any determination regarding an unconstitutional policy of practice is premature. *See Monell v. Dep't of Soc. Servs.*, 436 F.3d 658, 691 (1978); *see also Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) ("A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision."). Accordingly, disputed issues of material fact preclude summary judgment in favor of Defendant.[18]

---

[18] Further factual development may demonstrate that prison officials "imperfectly implemented the kosher requirements, or were even negligent in implementing [Plaintiff's] kosher diet" as opposed to "repeatedly violat[ing] kosher requirements." *Gallagher*, 587 F.3d at 1070. But the current factual record demonstrates genuine disputes of material fact exist as to whether the Grady County Jail provided meals that satisfied kosher requirements as represented.

## 2. Religious Materials / Opportunities to Pray

Plaintiff also claims he was denied his religious materials – a Bible, a Tallis and Tzitzit (or prayer shawl and tassels) – and he was denied the ability to pray for a period of time from his initial arrival at the Grady County Jail on February 10, 2015 until he met with Federal Liaison Forsythe on February 13, 2015.  Plaintiff's own allegations establish that Federal Liaison Forsythe inspected Plaintiff's religious materials and provided them to Plaintiff, approved his request to keep his Hebrew Bible in his possession, and allowed Plaintiff to pray daily in a secluded room. *See* Compl. at p. 5, ¶¶ 22-24.  The affidavit of Federal Liaison Forsythe sets forth facts that comport with Plaintiff's allegations.  *See* Forsythe Affidavit, ¶¶ 12-16.[19]  Defendant states in his affidavit that following Plaintiff's meeting with Federal Liaison Forsythe, Plaintiff "was able to pray daily, with the exception of emergencies."  *See* Gerlach Affidavit, ¶ 19.

Plaintiff further alleges that he was only allowed to pray five times during his fourteen-day detention at the Grady County Jail.  *See* Compl. at p. 6, ¶ 28.  He alleges that he again complained to Federal Liaison Forsythe about the "irregularity in allowing [him] to pray" and was advised on February 23, 2015, that the Grady County Jail was not subject to the BOP's rules regarding prayer. *Id.*, ¶¶ 28-29.  Plaintiff was transferred from the Grady County Jail on February 25, 2015.[20]

---

[19] According to Federal Liaison Forsythe, the meeting with Plaintiff occurred "on or prior to February 14, 2015."  *See id.*, ¶ 12.

[20] In his motion for summary judgment, Plaintiff adds factual allegations about the denial of his right to pray or conduct other religious studies that conflict with the allegations of the Complaint. For example, he now claims that his "daily" requests to pray in private were refused *all but twice* during his fourteen-day period of detention at the Grady County Jail.  *See* Pl'.s Mot. at p. 9.  And, Plaintiff now alleges that he was not allowed to keep his Hebrew Bible in his cell.  *Id.* at p. 5.  The Court rejects these vague and conclusory allegations.  The only evidence Plaintiff references to support these allegations is an incident report from the Grady County Jail.  *See* Incident Report [Doc. No. 34-5], attached to the Special Report [Doc. No. 34].  The incident report, however, documents the agreement reached between Federal Liaison Forsythe and Plaintiff regarding Plaintiff's prayer materials and constitutes further proof that prison officials worked to

The summary judgment record fails to establish a substantial burden on Plaintiff's ability to pray. Plaintiff was allowed to keep his own Bible after making the request to Federal Liaison Forsythe. By Plaintiff's own admissions, he was also allowed to pray *in private* on at least five occasions for the approximate nine-day period of time following his meeting with Federal Liaison Forsythe until his transfer from the Grady County Jail on February 25, 2015. Moreover, no facts establish that Plaintiff was precluded from using his Bible or praying *in his cell* (as opposed to in private) during this period of time.[21] Thus, to the extent there was any true interference with Plaintiff's ability to exercise his right to pray, the record reflects, at most, sporadic instances of such interference. *Cf. Stope v. Cummings*, 381 F. App'x 878, 881 (10th Cir. 2010) ("[S]cattered and minor complaints about kosher meals were insufficient as a matter of law to show that defendants imposed a substantial burden on [Plaintiff's] religious exercise.").

Even if questions of fact exist as to whether the conduct at issue constitutes a substantial burden, Plaintiff fails to identify any policy or custom of the Grady County Jail that resulted in a denial of the prayer materials he requested from his property box or in his alleged inability to pray. *See Monnell*, 436 U.S. at 691. Although Plaintiff alleges that the Grady County Jail provides only Christian Bibles to its inmates, Plaintiff's own allegations establish that Federal Liaison Forsythe "approved Plaintiff's request to keep his Bible in his possession in the unit where he was held." *See* Compl. at p. 5, ¶ 24.[22] And Plaintiff does not allege that his Bible was thereafter taken from

---

accommodate Plaintiff's prayer needs. Thus, the Court finds Plaintiff's self-serving allegations insufficient to withstand summary judgment.

[21] Although Plaintiff alleges that Federal Liaison Forsythe recommended a secluded area for prayer so that Plaintiff would not be subjected to harassment by other inmates, *see* Compl. at p. 5, ¶ 23, Plaintiff makes no allegations that he, in fact, ever faced such harassment by other inmates.

[22] The affidavits of Defendant Gerlach and Federal Liaison Forsythe include the statement: "Bibles are made available upon request to all inmates at the Grady County Jail, whether or not they are

him.  Indeed, he expressly limits his claim for "'Monell Liability'" to alleged deprivations of "his rights to freely exercise his religion *in the form of conducting his individual prayers, and in the form of denying him Kosher food*."  *Id*. at p. 8, ¶ 37 (emphasis added).  Thus, the summary judgment record is void of facts demonstrating that Plaintiff was deprived of his Bible as the result of any unconstitutional policy or custom of the Grady County Jail.[23]  Accordingly, Plaintiff has not demonstrated a basis for imposition of § 1983 liability against Defendant in his official capacity and Defendant is entitled to judgment as a matter of law on Plaintiff's § 1983 claim regarding his First Amendment right of access to religious materials and/or opportunities to pray.

## V.  Dismissal of Plaintiff's Claim for Punitive Damages Pursuant to the Court's Screening Authority

As a final matter, the Court addresses Plaintiff's claim for punitive damages and recommends dismissal of Plaintiff's claim pursuant to the Court's screening authority.  *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  Plaintiff brings only official-capacity claims in this action.  It is well-established that punitive damages cannot be awarded against a county in an action

---

federal detainees."  *See* Gerlach Affidavit, ¶ 13; Forsythe Affidavit, ¶ 10.  The affidavits fail to specify whether the reference to "Bibles" is limited to Christian Bibles – a rather significant omission given the allegations made by Plaintiff.  Nonetheless, the record fails to establish that Plaintiff suffered constitutional injury due to a policy or custom of the Grady County Jail in not providing Plaintiff with a Bible.

[23] The Court further notes that there is no evidence in the record that Plaintiff ever submitted any complaint to Federal Liaison Forsythe about the Grady County Jail's provision of only Christian Bibles.  Instead, Plaintiff's own allegations establish his complaints to Federal Liaison Forsythe focused solely on a request to be allowed access to his Bible that had been transported with him. *See, e.g*., Compl., ¶ 17 ("Plaintiff filled out a "Marshal Liaison Request Form' where he described the issues related to getting his personal religious property which are BOP's [sic] approved, and the matter related to receiving Kosher food in compliance with the BOP's rules and manual."); *see also id*., ¶ 21 (discussing "extensive letter" Plaintiff addressed to the "Warden of Grady County Jail" reiterating "[P]laintiff's demand for the Constitutional right to freely exercise his religion by permitting him to have his Jewish Prayer Book, and his prayer related items, and be allowed to pray as required in the Jewish religion.").

brought pursuant to § 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."); *see also Layton v. Board of Cty. Comm'rs of Oklahoma Cty.*, No. CIV-09-1208-C, 2013 WL 12069040 at *1 (W.D. Okla. Dec. 6, 2013) (unpublished op.) (applying holding of *City of Newport* to claim brought against county); *Stevenson v. Salt Lake Cty.*, No. 2:12-cv-44-PMW, 2014 WL 4851873 at *18 (D. Utah Sept. 29, 2014) (unpublished op.) (same). Accordingly, it is recommended that Plaintiff's claim for punitive damages be dismissed for failure to state a claim upon which § 1983 relief may be granted.

## RECOMMENDATION

It is recommended that Defendant's Motion for Summary Judgment [Doc. No. 89] be granted as to Plaintiff's claim for § 1983 relief alleging a free exercise violation regarding his right to access religious materials and engage in prayer practices. It is further recommended that Defendant's Motion for Summary Judgment be denied in all other respects. Disputed issues of material fact exist with respect to the affirmative defense of exhaustion of administrative remedies under 42 U.S.C. § 1997e(a); whether the limitation on recovery set forth in 42 U.S.C. § 1997e(e) applies; and whether Defendant substantially burdened Plaintiff's free exercise rights by serving him food that did not comply with the requirements of a kosher diet.

Because Plaintiff's Cross-Motion for Summary Judgment relies on the same factual and legal issues as those addressed by the Court in ruling on Defendant's Motion for Summary Judgment, it is recommended that Plaintiff's Cross-Motion for Summary Judgment be denied.

Finally it is recommended that Plaintiff's claim for punitive damages be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by September 5, 2017. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

In conjunction with the Report and Recommendation on Defendant Mike Lennier's Motion for Summary Judgment [Doc. No. 90] filed on this same date, this Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 15th day of August, 2017.

BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE