# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RICHARD AMMAR CHICHAKLI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-15-687-D |
| | ) | |
| CHARLES E. SAMUELS, JR., Director, | ) | |
| Federal Bureau of Prisons, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter is before the Court for review of the Report and Recommendation ("Report") issued August 15, 2017 [Doc. No. 121], by United States Magistrate Judge Bernard M. Jones pursuant to 28 U.S.C. § 636(b)(1)(B). Judge Jones recommended the Court grant in part and deny in part Defendant Shane Wyatt's[1] Motion for Summary Judgment [Doc. No. 89]. Judge Jones also recommended the Court deny Plaintiff's Cross-Motion for Summary Judgment [Doc. No. 91] and dismiss Plaintiff's claim for punitive damages pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

The time for filing objections to the Report expired on September 5, 2017.[2] Defendant Jim Gerlach ("Defendant") timely objected [Doc. No. 123]. The Court, having

---

[1] Shane Wyatt is no longer the jail administrator at the Grady County Jail. Hereinafter, and pursuant to FED. R. CIV. P. 25(d), Jim Gerlach will be substituted as a named party.

[2] Judge Jones issued a separate report concerning Defendant Mike Lennier's Motion for Summary Judgment [Doc. No. 122], which will be addressed by the Court in a separate order.

conducted a *de novo* review[3], overrules Defendant's objections and adopts the Report in its entirety.

## BACKGROUND

Plaintiff, a former federal prisoner appearing *pro se*, seeks monetary relief pursuant to 42 U.S.C. § 1983.[4] Alleging a violation of his First Amendment right to religious exercise, Plaintiff asserts that during his confinement[5] he was denied kosher meals, access to religious materials, and the ability to engage in daily prayer.

Defendant raises the affirmative defense that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). He also claims § 1997e(e) of the PLRA, limiting a prisoner's recovery of damages for mental or emotional injury, bars Plaintiff's claims. Alternatively, Defendant moves for summary judgment on the following grounds: (1) Plaintiff has failed to show that his religious beliefs are sincere; (2) Plaintiff has failed to show that his religious exercise rights were substantially burdened; and (3) Plaintiff has failed to show that the

---

[3] The Court must make a *de novo* determination of any part of the Report to which a specific objection is made, and may accept, modify, or reject the recommended decision. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3).

[4] At the time the Complaint was filed, Plaintiff was a federal prisoner in the custody of the Federal Bureau of Prisons (BOP). The BOP's inmate locator service, available at https://www.bop.gov/inmateloc/, identifies Plaintiff's release date as June 9, 2017.

[5] Pursuant to a contractual agreement with the federal government, Plaintiff was detained at the Grady County Jail from February 10, 2015 through February 24, 2015, while in transit between BOP facilities. *See* Gerlach's Aff. [Doc. No. 89-1] at ¶ 4; *see also* Detention Services Intergovernmental Agreement [Doc. No. 90-2].

violation of his religious exercise rights resulted from an unconstitutional policy or custom. [Doc. No. 89].

Plaintiff responded to Defendant's Motion for Summary Judgment [Doc. No. 100] and filed a separate motion for summary judgment [Doc. No. 91] on his § 1983 claims, contending that he had established a violation of his First Amendment rights. Plaintiff separately moves for summary judgment pursuant to the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1 *et seq*. Judge Jones correctly noted Plaintiff did not bring a claim pursuant to RLUIPA in his Complaint nor sought leave to amend the Complaint to assert such a claim. Thus, review is limited to the § 1983 claims alleging a violation of Plaintiff's First Amendment rights.

## DISCUSSION & ANALYSIS

In determining whether summary judgment is appropriate, the relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). Before the burden shifts to the nonmoving party, the moving party must meet its "initial responsibility" of establishing that no genuine issue of material fact exists and it is entitled to summary judgment as a matter of law. FED. R. CIV. P. 56(a); *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002); *Anderson*, 477 U.S. at 247 (court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"). "[S]ummary judgment will not lie if the dispute about a material fact

is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When the moving party meets its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., LTD., et al., v. Zenith Radio Corp., et al.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (internal citations omitted); *see also Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999) (non-moving party "must present more than a scintilla of evidence"). The adverse party must identify "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co., LTD, et al.*, 475 U.S. at 587. Moreover, unsupported conclusory allegations are not sufficient to defeat summary judgment. *Matthiesen v. Banc One Mortgage Corp.*, 173 F.3d 1242, 1247 (10th Cir. 1999). Finally, in evaluating a motion for summary judgment, a court must consider the evidence in the light most favorable to the nonmoving party and "resolve all ambiguities and disagreements" in favor of that party. *Bee v. Greaves*, 744 F.2d 1387, 1389 (10th Cir. 1984).

### A. Plaintiff's Response to Defendant's Motion for Summary Judgment

Defendant asserts in his objections that Plaintiff's Response to Defendant's Motion for Summary Judgment does not meet the parameters of FED. R. CIV. P. 56(e)(2) or the Local Rules. Specifically, Defendant contends that Plaintiff did not refer with particularity to those portions of the record upon which he relies, and therefore, Defendant's statement of material facts should be deemed admitted. [Doc. No. 123] at 2-3. Under Rule 56(e)(3),

the Court has an independent duty, even in the absence of a response by the adverse party, to determine that summary judgment is appropriate. *See Reed v. Bennett*, 312 F.3d 1190, 1194-1196 (10th Cir. 2002); *Murray v. City of Tahlequah*, 312 F.3d 1196, 1200 (10th Cir. 2002). The Court is not limited to the materials cited in Plaintiff's response, but rather may consider other materials in the record. FED. R. CIV. P. 56(c)(3). Moreover, a *pro se* litigant's pleadings are to be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). For reasons discussed below, the Court finds Judge Jones properly assessed the facts and evidence of record in the light most favorable to Plaintiff's position, as required by Rule 56.

### B. Exhaustion of Administrative Remedies

Judge Jones concluded that Defendant defeated his exhaustion defense by his own summary judgment submissions. Specifically, Judge Jones noted that Defendant "disingenuously relies on the grievance procedures of the Grady County Jail and limits the exhaustion defense to Plaintiff's failure to submit grievances pursuant to those procedures," while acknowledging elsewhere in the motion that Plaintiff, as a federal inmate, was required to comply with a different procedure. *See* Report [Doc. No. 121] at 7-8. Judge Jones further noted, and the record reflects, that Plaintiff submitted "paperwork" to Federal Liaison Eric Forsythe and subsequently met with him, consequently resulting in some relief to Plaintiff. *Id.* at 8; *see also* Gerlach's Aff. [Doc. No. 89-1] at ¶¶ 15-20; Forsythe's Aff. [Doc. No. 89-3] at ¶¶ 12-17. Judge Jones indicated

some uncertainty as to whether Plaintiff had sufficient time to grieve issues relating to kosher meals served given his transport from the Grady County Jail on February 24, 2015. *See* Report [Doc. No. 121] at 9. Finally, Judge Jones called attention to the conflicting provisions in the Grady County Jail Inmate Handbook [Doc. No. 89-15] and the 9.01 Inmate Grievances Policy [Doc. No. 89-16] concerning jail grievance procedures and noted some concern in the lack of evidence demonstrating that the policies and procedures were disseminated to inmates or jail employees. *See* Report [Doc. No. 121] at 9, n. 7.

Defendant continues to maintain in his objections to the Report that it is "undisputed" that Plaintiff never submitted a formal grievance pursuant to the Inmate Handbook. *See* Def.'s Objections [Doc. No. 123] at 4. Failing to address the conflicting grievance procedures, Defendant asserts administrative remedies were available and Plaintiff should have exhausted them. *Id.* Although Defendant points to nothing in the record to show that Plaintiff was aware of the grievance procedures or that he was required to follow both procedures, Defendant maintains unawareness does not excuse the exhaustion requirements under the PLRA. *Id*. at 5.

The Court is not persuaded by Defendant's arguments. Administrative exhaustion is an affirmative defense on which Defendant bears the burden of proof. *See Jones v. Bock,* 549 U.S. 199, 216 (2007); *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). According to Defendant, when a federal detainee, like Plaintiff, has an issue or concern at the Grady County Jail, he must submit a Federal Detainee's Request for Services to Federal Liaison Forsythe. [Doc. No. 89] at ¶ 31; Gerlach's Aff. [Doc. No. 89-1] at ¶ 12; Forsythe's

6

Aff. [Doc. No. 89-3] at ¶ 9. Forsythe will generally respond to the Federal Detainee's Request for Services as soon as practicable. *Id.*

By Defendant's own submissions, that is exactly what transpired here. Federal Liaison Forsythe "received paperwork from [Plaintiff] regarding his request to use the prayer materials contained in his property box." Gerlach's Aff. [Doc. No. 89-1] at ¶ 12; Forsythe's Aff. [Doc. No. 89-3] at ¶ 9. Forsythe subsequently met with Plaintiff. After their meeting, Plaintiff's prayer materials were placed in the central control room, so he could have access to them, and he was given his Hebrew bible to keep in his cell. Gerlach's Aff. [Doc. No. 89-1] at ¶¶ 16-17; Forysthe's Aff. [Doc. No. 89-3] at ¶¶ 13-14. Plaintiff and Forsythe also discussed the fact that Plaintiff had not been receiving kosher meals, and Forsythe corrected the information on Plaintiff's book-in sheet, which erroneously indicated he was allergic to "Kosher." Gerlach's Aff. [Doc. No. 89-1] at ¶ 20; Forysthe's Aff. [Doc. No. 89-3] at ¶ 17.

Although Defendant recognizes that this was the procedure Plaintiff was required to follow as a federal detainee, to support his exhaustion defense Defendant asserts that Plaintiff failed to follow the procedures outlined in the Grady County Inmate Handbook ("Inmate Handbook") and supplemental 9.01 Inmate Grievances Policy. Absent from the record is any evidence that Plaintiff was required as a federal detainee to also follow the Grady County Jail policies and procedures for initiating a grievance. Nonetheless, it appears Plaintiff also complied with those procedures.

The Inmate Handbook provides that "[b]efore submitting a 'Request to Staff' form, an inmate shall attempt to resolve the issue by talking with a responsible authority or other

7

appropriate staff member." [Doc. No. 89-15] at 8. "If the issue is not resolved by verbal communications … the inmate shall submit a 'Request to Staff' form." *Id.* The Inmate Handbook further provides that "[b]efore filing a formal grievance, the inmate must try to resolve the complaint by communicating issues to a Detention Officer." *Id*. at 9. Plaintiff met with Forsythe on February 14, 2015[6], and verbally communicated his issues. Because the issues continued to persist, Plaintiff requested a Request to Staff form on February 21, 2015.[7] [Doc. No. 89-10]; Gerlach's Aff. [Doc. No. 89-1] at ¶ 29; Forsythe's Aff. [Doc. No. 89-3] at ¶ 18. Plaintiff was transported from the facility on February 24, 2015. The supplemental 9.01 Inmate Grievances Policy provides that the designee has up to 30 days to respond to the inmate's request to staff. [Doc. No. 89-16].

---

[6] The Inmate Handbook indicates that an inmate must submit his grievance within 15 calendar days of the incident or when the inmate learned of the issue. [Doc. No. 89-15] at 9. The supplemental 9.01 Inmate Grievances Policy, on the other hand, indicates that an inmate has 72 hours to submit a request to staff. [Doc. No. 89-16]. Judge Jones identified this as one example of the conflicting grievance procedures maintained by the Grady County Jail. [Doc. No. 121] at n. 7. Regardless of what time constraint controls, it appears Plaintiff complied with both. Defendant submits that Plaintiff arrived at the Grady County Jail late at night on February 10, 2015, and that a kosher meal was likely not available late at night. Forsythe's Aff. [Doc. No. 89-3] at ¶¶ 5-6. Plaintiff did not ask for anything to eat while housed in the gymnasium on February 10, 2015. [Doc. No. 89] at ¶ 26. Sometime on or prior to February 14, 2015, Forsythe received "paperwork" from Plaintiff concerning his request to have access to his prayer materials. Forsythe's Aff. [Doc. No. 89-3] at ¶ 12. Also on February 14, Plaintiff and Forsythe discussed the kosher meal issue. Forsythe's Aff. [Doc. No 89-3] at ¶ 17.

[7] This request also appears to comply with the 72-hour requirement and/or the requirement that the inmate submit a request at the time he learns of the issue. Defendant submits Plaintiff refused his lunch tray on February 21, 2015, and Plaintiff requested and was given a Request to Staff form that same day. [Doc. No. 89-10]; Forsythe's Aff. [Doc. No. 89-3] at 18.

8

Forsythe concedes that he "likely received" this Request to Staff form from Plaintiff and that the request "probably concerned [Plaintiff's] request that the Kosher meals meet the standards he was used to at the federal Bureau of Prisons." Forsythe's Aff. [Doc. No. 89-3] at ¶ 19. Although Forsythe contends, "[he] likely explained to [Plaintiff] that the Grady County Jail is not required to follow any policies of the federal Bureau of Prisons," there is nothing in the record to support Forsythe's assertion that he did, in fact, respond to Plaintiff. Moreover, there is no evidence that the Grady County Jail is not held to the same standards as the BOP when it comes to serving kosher meals. Forsythe's Aff. [Doc. No. 89-3] at ¶ 19. It seems plausible that Forsythe may not have responded given the 30-day period referenced above and the fact that Plaintiff left the facility on February 24. In any event, it appears from Forysthe's affidavit that he knew what Plaintiff was complaining about and Plaintiff was afforded some relief apparently following his meeting with Forsythe on February 14. *See Kikumura v. Osagie*, 461 F.3d 1269, 1285 (10th Cir. 2006) (PLRA's exhaustion requirement is satisfied "so long as [the inmate's grievance] provides prison officials with enough information to investigate and address the inmate's complaint internally.").

"The plain language of the PLRA requires that prisoners exhaust only *available* remedies." *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011); 42 U.S.C. § 1997e(a). "It follows that if an administrative remedy is not available, then an inmate cannot be required to exhaust it." *Tuckel*, 660 F.3d at 1252; *see also Ross v. Blake*, 136 S. Ct. 1850, 1855 (A prisoner need not exhaust remedies if they are not available). "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative

9

remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). Courts must also ensure that any defects in exhaustion were not induced by the actions or inactions of jail officials. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see also Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (prison official's failure to respond to a grievance within the time limits prescribed by the grievance policy renders an administrative remedy unavailable).

Judge Jones emphasized that even if Plaintiff were required to follow the additional grievance procedures of the Grady County Jail – a fact not established by the present record – the conflicting procedures maintained by the jail calls into question the availability of administrative remedies. [Doc. No. 121] at n. 7. The Court concurs with Judge Jones. A grievance procedure "might be so opaque that it becomes, practically speaking, incapable of use." *Ross*, 136 S. Ct. at 1859 ("When rules are 'so confusing that … no reasonable prisoner can use them,' then 'they're no longer available.'") In other words, "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. The facts of this case raise questions as to whether Plaintiff had an "available" administrative remedy to exhaust.

Moreover, a review of the present record raises factual questions concerning the dissemination of the grievance procedure to Plaintiff. The undated Inmate Handbook submitted by Defendant provides that inmates will be issued a handbook upon their arrival at the facility. [Doc. No. 89-15] at 3. The inmate will be responsible for the handbook until it is returned upon the inmate's release. *Id*. The Inmate Handbook further provides

10

that it is "current as of the date of publication; however, the information is subject to change." *Id*. No publication date is listed. Gerlach and Forsythe affirm that when a federal detainee is brought to the Grady County Jail, "they are processed, and asked about their faith, any medical issues, among numerous other questions." Gerlach's Aff. [Doc. No. 89-1] at ¶ 7; Forsythe's Aff. [Doc. No. 89-3] at ¶ 4. They also indicate that Plaintiff spoke with jailer Mikel Fitzpatrick during the book-in process. Gerlach's Aff. [Doc. No. 89-1] at ¶ 11; Forsythe's Aff. [Doc. No. 89-3] at ¶ 8. Neither indicate whether Plaintiff was issued an Inmate Handbook. Moreover, Plaintiff's book-in sheet and offender incident report do not indicate he was issued an Inmate Handbook or that he returned one upon release from the facility.

Judge Jones noted that Defendant's "lack of evidence" in demonstrating that the policies had been disseminated or implemented "is perplexing." Courts have recognized that unavailability extends to prison personnel's failure to inform a prisoner of the grievance process. *See e.g., King v. McCarty*, 781 F.3d 889, 895-896 (7th Cir. 2015) (remedies unavailable where prisoner transferred between two correctional facilities had no access to grievance process and where later allotted time for filing grievance was impracticable). *Compare Garcia, et al. v. Taylor, et al.,* 113 Fed. Appx. 857, 859 (10th Cir. Oct. 19, 2004) (unpublished)[8], *citing Arnold v. Goetz,* 245 F. Supp. 2d 527, 538 (S.D.N.Y. 2003) ("A prisoner who is told that the Inmate Grievance Program exists, but whose efforts to learn how he can avail himself of the IGP are frustrated by correctional

---

[8] Unpublished opinion cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1.

officials, is only marginally less ignorant of the grievance procedure than an inmate wholly unaware of the program. Neither inmate, in effect, has recourse to an available administrative remedy.").

In summary, Defendant has not shown that he is entitled to summary judgment on this issue as a matter of law. In fact, the record at this point demonstrates the contrary. The exhaustion requirement in 42 U.S.C. § 1997e(a) is not a barrier to Plaintiff's claims.

C. **PLRA's Limitation on Recovery**

Defendant next contends that without any evidence of physical injury Plaintiff cannot maintain a claim under the PLRA. The Court disagrees. Section 1997e(e) does not bar recovery of nominal damages for violations of prisoners' rights. *Searles v. Van Bebber*, 251 F.3d 869, 879 (10th Cir. 2001). In fact, an award of nominal damages is mandatory upon a finding of a constitutional violation. *Id.* The Court agrees with Judge Jones' conclusion that the Defendant's request for summary judgment pursuant to § 1997e(e) is premature.

D. **Plaintiff's First Amendment Claims**

Judge Jones concluded that Defendant is entitled to summary judgment on Plaintiff's § 1983 claim regarding his First Amendment right of access to religious materials and ability to pray. Plaintiff has not filed a timely objection to the Report nor requested additional time to object. Thus, the Court finds that Plaintiff has waived further review of the issues addressed in the Report. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). For this reason, the Court will grant Defendant's Motion for Summary

12

Judgment [Doc. No. 89] as to Plaintiff's claim for § 1983 relief alleging a free exercise violation of his right to access religious materials and engage in prayer.

Defendant objects to Judge Jones' recommendation denying Defendant's Motion for Summary Judgment as to Plaintiff's claim for § 1983 relief alleging denial of kosher meals. Defendant contends that Plaintiff has failed to establish the sincerity of his religious beliefs or a substantial burden on his religious exercise. Upon *de novo* review of the record, the Court concurs with Judge Jones' conclusions.

### 1. Sincerity of Religious Beliefs

Plaintiff testified during his deposition that he received kosher meals "since Day 1" while incarcerated in the Federal Bureau of Prisons. [Doc. No. 89-5] at 20. Upon his arrival at the Grady County Jail, he notified prison officials that he kept "kosher." Forsythe's Aff. [Doc. No. 89-3] at ¶ 8; Gerlach's Aff. [Doc. No. 89-1] at ¶ 11. Plaintiff also indicated in his deposition that he refused to eat the meals provided to him at Grady County Jail due to his religious beliefs because the meals were not kosher. [Doc. No. 89-5] at 28. The Offender Incident Report confirms Plaintiff refused his lunch tray on February 21, 2015. [Doc. No. 89-10]. Moreover, Plaintiff requested to use his prayer materials and his request was granted. Forsythe's Aff. [Doc. No. 89-3] at ¶¶ 12-15; *see also* [Doc. No. 89-10]. These facts demonstrate the sincerity of Plaintiff's religious beliefs. *See LaFevers v. Saffle*, 936 F.2d 1117, 1119 (10th Cir. 1991) (a prisoner's belief in religious dietary practices is constitutionally protected if the belief is genuine and sincere, even if such dietary practices are not doctrinally required by the prisoner's religion).

Defendant asserts that this is "one of those rare cases" where summary judgment is appropriate. The Court disagrees. In challenging the sincerity of Plaintiff's beliefs, Defendant relies entirely on Plaintiff's history prior to his incarceration. Even in his objections, Defendant does not address Plaintiff's conduct since incarceration, including his conduct at the Grady County Jail. Moreover, as Judge Jones pointed out, the record is void of any evidence that any prison official at the Grady County Jail questioned the sincerity of Plaintiff's beliefs.[9] Certainly, there does not have to be evidence that Plaintiff has held the religious belief his entire life. *See e.g., Beerheide v. Suthers, et al.*, 82 F. Supp. 2d 1190, 1194-1195 (D. Colo. 2000), *aff'd*, 286 F.3d 1179 (10th Cir. 2002) (Prisoner born of Jewish father and non-Jewish mother, who was not raised in Jewish faith and had not undergone all requirements for conversion, but had studied Judaism during his six years of incarceration, was sincere in his religious belief); *Maguire v. Wilkinson*, 405 F. Supp. 637, 640 (D. Conn. 1975) (fact that claimed religious belief was not held prior to incarceration cannot automatically lead to the conclusion that the religious belief is not genuine).

In essence, Defendant's challenge focuses almost exclusively on credibility, which can rarely be determined on summary judgment. *Kay v. Bemis*, 500 F.3d 1214, 1219 (10th Cir. 2007). Plaintiff's beliefs are not "so bizarre" or "so clearly nonreligious in motivation" to warrant summary dismissal on the sincerity prong. *Id.*

### 2. Substantial Burden on Religious Practices

---

[9] Nor is there any evidence suggesting Plaintiff's religious beliefs were questioned while he was incarcerated in the BOP.

Next, Defendant contends that no substantial burden was placed on Plaintiff's religious practices. The Court disagrees. On the present record, factual questions remain concerning whether the meals provided to Plaintiff were kosher, precluding summary judgment. Pointing specifically to the absence of kosher meals during the first four days of Plaintiff's incarceration at the Grady County Jail, Defendant argues Plaintiff received kosher meals the remainder of his stay. Defendant attempts to argue this was simply an "inconvenience" to Plaintiff's religious practice rather than a "substantial burden," which is required in order to recover. Defendant's argument overstates the record.

First, Plaintiff disputes most of the relevant facts. Second, the Court is not limited to Plaintiff's response, but may consider other materials in the record. FED. R. CIV. P. 56(c)(3). Third, Plaintiff's complaints about the lack of kosher meals at the jail demonstrate this was "more than an inconvenience." Rather than eat a non-kosher diet in violation of his sincerely held religious beliefs, Plaintiff chose not to eat. [Doc. No. 89-5] at 28-29, 37; [Doc. 1] at ¶ 31; [Doc. No. 89-10]. "[A] prisoner's religious dietary practice is substantially burdened when the prison forces him to choose between his religious practice and adequate nutrition." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1317 (10th Cir. 2010), *citing Nelson v. Miller*, 570 F.3d 868, 879 (7th Cir. 2009).

Plaintiff's complaints concerning the non-kosher meals demonstrate more than an isolated act of negligence. *See Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009) (holding isolated violation did not support Free Exercise claim). To the contrary, during Plaintiff's 14-day confinement, he faced a Hobson's choice of either eating a non-kosher diet in violation of his beliefs or not eating. *Abdulhaseeb*, 600 F.3d at 1317. Plaintiff

testified in his deposition that he could not buy commissary at the Grady County Jail; thus, he lacked any suitable alternative to not eating. [Doc. No. 89-5] at 29. Defendant has not presented any evidence to refute this assertion. *See Beerheide v. Suthers*, 286 F.3d 1179, 1187 (10th Cir. 2002) (proposed alternative to have prisoners pay a 25-percent co-payment for kosher diet not a reasonable alternative). *Compare Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 814 (8th Cir. 2008) (uncontested evidence that prisoner could purchase his own halal commissary meals, thus no substantial burden).

Defendant's assertion that it is undisputed that all food items provided to Plaintiff "were certified Kosher and approved by rabbinical authorities," is belied by the evidence in the present record. After careful analysis of the record, Judge Jones concluded that fact questions still exist as to whether the meals provided to Plaintiff were kosher. [Doc. No. 121] at 14-18. Defendant does not refute these factual questions in his objections.

The photographs submitted by Defendant as evidence Plaintiff was provided kosher meals do not satisfy the factual dispute. Plaintiff specifically challenges the photographs in his response. [Doc. No. 100] at 3. There is no evidence that the food depicted in the undated photographs is the same food that was served to Plaintiff. As Judge Jones noted, Leslie Rico did not become the Food Services Director until March 2015, after Plaintiff left the facility. Rico's Aff. [Doc. No. 89-11] at ¶ 2. Although Ms. Rico indicates that a Food Services Agreement to provide religious meals was in place between Trinity Services Group and the Grady County Jail, no affidavit or other evidentiary material from Trinity Services Group has been provided. Similarly, Defendant does not provide any evidence that the packaged food depicted in the photographs was provided through Trinity Services

16

Group. Moreover, a female inmate at the jail during the same time as Plaintiff had similar complaints about the food not being kosher. [Doc. No. 89-20]. Finally, Plaintiff alleges that the food served to him was identical to the food served to inmates who were not on a kosher diet. [Doc. No. 1] at ¶ 25; *see also* [Doc. 89-5] at 27. Judge Jones correctly noted that this creates a reasonable inference that Plaintiff was not receiving kosher meals. [Doc. No. 121] at 14, n. 11.

### 3. Unconstitutional Policy or Custom

The Court concurs with Judge Jones that summary judgment determination regarding an unconstitutional policy or custom is premature. Unconstitutional policies or customs can take three forms: (1) an express policy that causes a constitutional violation when enforced; (2) a longstanding practice that, although not authorized by written law or express policy, is permanent and well settled; or (3) an allegation that the constitutional deprivation was caused by a person with final policy-making authority. *See Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003); *see also Glisson v. Indiana Department of Corrections*, 849 F.3d 372, 379 (7th Cir. 2017) (the content of an official policy, a decision by a final decision-maker, or evidence of custom will suffice). It does not matter whether the policy is written down, requires aggressive intervention or a hands-off approach. *Glisson*, 849 F.3d at 379 ("The hands-off policy is just as much a 'policy' as the 100% enforcement policy is.").

The Inmate Handbook submitted by Defendant provides that all inmates will have "[t]he right to practice a religion within the limitations of resources available and security procedures in effect." [Doc. No. 89-15] at 13. The 6.10 Food Service Policy provides that

17

requests for special diets for religious reasons shall be forwarded to the kitchen supervisor and reasonable provisions made. [Doc. No. 89-17] at 2. It further provides that all aspects of food service are under the supervision of the Kitchen Supervisor, but any food complaints "will be forwarded to the facility administrator for disposition." [Doc. No. 89-17] at 1-2. Defendant concedes in his affidavit that he has been the jail administrator since May 2014, and as such, he is "authorized and directed to have charge of the Grady County Jail" and of all persons confined therein. Gerlach's Aff. [Doc. No. 89-1] at ¶¶ 2-3.

Courts have held that the failure to make policy may also be actionable. *See e.g., Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004) (ex-prisoner stated claim in *Monell* suit alleging that the district's policy or custom caused constitutional violations in prison conditions; "faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction."); *Sims v. Mulcahy*, 902 F.2d 524 (7th Cir. 1990) ("in situations that call for procedures, rules or regulations, the failure to make policy itself may be actionable"). Moreover, to the extent that Defendant Gerlach, as policymaker, approved decisions by the Kitchen Supervisor, Defendant's ratification is sufficient to impose municipal liability[10]. *See Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009) ("[I]f a subordinate's position is subject to review by the municipality's authorized policymakers and the authorized policymakers approve a

---

[10] The Food Services Agreement submitted by Defendant expressly provides that "Compass shall supply religious, diet, and other specialty meals *as directed and approved by Client*." [Doc. No. 89-12] at 1 (emphasis added). Client is the Grady County Industrial Authority. Gerlach's affidavit indicates that Trinity was formerly known as Compass. The Food Services Agreement does not provide specifically how special or religious meals will be prepared or served.

subordinate's decision and the basis for it, their ratification will be chargeable to the municipality."). Because fact questions remain concerning whether the meals served to Plaintiff were kosher, any determination regarding an unconstitutional policy is premature. Accordingly, the Court denies summary judgment.

E.    **Plaintiff's Claim for Punitive Damages**

Citing to the proposition that a municipality is immune from punitive damages, Judge Jones recommended dismissal of Plaintiff's claim for punitive damages. *See City of Newport et al., v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."). Plaintiff has not objected to the Report or requested additional time to object. *See Moore v. United States*, 950 F.3d 656, 659 (10th Cir. 1991) (Tenth Circuit has adopted a firm waiver rule when a party fails to object to the findings and recommendations of the magistrate). Accordingly, the Plaintiff's claim for punitive damages is dismissed.

## CONCLUSION

For these reasons, the Court adopts Judge Jones' Report and Recommendation [Doc. No. 121].

IT IS THEREFORE ORDERED that Defendant Jim Gerlach's Motion for Summary Judgment [Doc. No. 89] is GRANTED in part and DENIED in part. Defendant Gerlach is entitled to summary judgment on Plaintiff's § 1983 claim regarding his First Amendment right of access to religious materials and ability to pray. However, genuine disputes of material facts preclude summary judgment on Plaintiff's § 1983 claim for denial of kosher meals.

19

IT IS FURTHER ORDERED that Plaintiff's Cross-Motion for Summary Judgment [Doc. No. 91] is DENIED and Plaintiff's claim for punitive damages is DISMISSED.

IT IS SO ORDERED this **27th** day of September 2017.

*[signature]*
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE