IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

RICHARD AMMAR CHICHAKLI, )
          Plaintiff, )
v. ) Case No. CIV-15-687-D
CHARLES E. SAMUELS, JR., Director, )
Federal Bureau of Prisons, *et al.,* )
          Defendants. )

**ORDER**

Before the Court is Defendant Jim Gerlach's Second Motion for Summary Judgment[1] [Doc. No. 146], filed pursuant to FED. R. CIV. P. 56. Plaintiff responded in opposition [Doc. No. 148], and Defendant Jim Gerlach replied [Doc. No. 151]. The matter is fully briefed and at issue.

**PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff, a former federal prisoner appearing *pro se*, seeks monetary relief pursuant to 42 U.S.C. § 1983.[2] Alleging a violation of his First Amendment right to religious exercise, Plaintiff asserts in his Complaint that during his confinement at the Grady County

---

[1] Gerlach's First Motion for Summary Judgment [Doc. No. 89] was granted in part and denied in part on September 27, 2017. [Doc. No. 125]. Subsequently, the Court set a new dispositive motion deadline after full discovery; the new deadline was May 9, 2018, which was extended to June 8, 2018. [Doc. Nos. 129, 137].

[2] At the time the Complaint was filed, Plaintiff was a prisoner in the custody of the Federal Bureau of Prisons (BOP). Plaintiff was released to home confinement on March 10, 2017. [Doc. No. 115].

Jail[3] he was denied kosher meals, access to religious materials, and the ability to engage in daily prayer. The only remaining claim against Defendant Jim Gerlach ("Gerlach") is Plaintiff's assertion that he was denied kosher meals. Plaintiff's other claims against Gerlach were disposed of on summary judgment on September 27, 2017. [Doc. No. 125].

Gerlach raises the affirmative defense that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). He also claims § 1997e(e) of the PLRA, limiting a prisoner's recovery of damages for mental or emotional injury, bars Plaintiff's claim. Alternatively, Gerlach moves for summary judgment on the following grounds: (1) Plaintiff has failed to show that his religious belief in Judaism is sincere; (2) Plaintiff has failed to show that his religious exercise rights were substantially burdened; and (3) Gerlach, in his official capacity, is not subject to municipal liability. [Doc. No. 146].

## STANDARD OF DECISION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017) (*quoting* FED. R. CIV. P. 56(a)). A dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d

---

[3] Pursuant to a contractual agreement with the federal government, Plaintiff was detained at the Grady County Jail from February 10, 2015 through February 24, 2015, while in transit between BOP facilities. *See* Gerlach's Aff. [Doc. No. 146-1 at ¶¶ 4, 8, 33]; *see also* Det. Services Intergovernmental Agreement [Doc. No. 146-2].

1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). At the summary judgment stage, the Court views the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Williams v. FedEx Corporate Services*, 849 F.3d 889, 896 (10th Cir. 2017).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-671 (10th Cir. 1998) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the movant meets that burden, the nonmovant must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671; *see also* FED. R. CIV. P. 56(c)(1)(A). To accomplish this, the nonmovant must identify facts by reference to the pleadings, depositions, other discovery materials, exhibits or affidavits. *See Id.* The Court is not limited to the cited materials, but rather may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court's inquiry is whether the facts and evidence of record present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). Unsupported conclusory allegations are not sufficient to defeat summary judgment. *Matthiesen v. Banc One Mortgage Corp.*, 173 F.3d 1242, 1247 (10th Cir. 1999).

"The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). Moreover, a *pro se* litigant's pleadings are to be liberally construed and held to a less stringent standard than formal pleadings

drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## UNDISPUTED AND MATERIAL FACTS[4]

Born in Damascus, Syria, Plaintiff's birth name is Ammar Chichakli. For nine years, Plaintiff lived in Saudi Arabia and attended the University of Riyadh. He also lived in the United Arab Emirates on several occasions. While living in Saudi Arabia and the United Arab Emirates, Plaintiff said he was Christian because "Jews are not allowed." [Doc. No. 146-5 at 107].

Although Plaintiff has admittedly denied their familial relation in the past, Plaintiff now states that Adib Bin Hassan Al-Shishakli[5], the former president of Syria, was his uncle. Plaintiff alleges that the Chichakli family was secretly from a Jewish background.

From 1996 through 2005, Plaintiff lived in Richardson, Texas, and worked as an accountant. Plaintiff seriously started practicing Judaism and keeping kosher in 2005. Until that time, he had not openly practiced Judaism in the United States. While living in the United States, Plaintiff and his second wife traveled to Saudi Arabia, the United Arab Emirates, Turkey and Syria to visit family.

---

[4] This statement includes material facts presented by both parties that are supported as required by FED. R. CIV. P. 56(c)(1). If a party has asserted a fact, or asserted that a fact is disputed, but has failed to provide necessary support, the assertion is disregarded. All facts are stated in the light most favorable to Plaintiff.

[5] There are two spellings for this name when transliterated from Arabic to Roman script – Shishakli or Chichakli. Both spellings are correct.

Plaintiff left the United States in 2005 and lived in Russia and Australia. While living in Australia, Plaintiff lived under the false, assumed non-Jewish name, Jehad Al-Mustafa. In 2013, he was arrested in Australia and extradited to the United States on federal charges of conspiracy, money laundering and wire fraud in the Southern District of New York. Plaintiff was convicted by a jury in December 2013 and sentenced on December 4, 2014, to 60 months' imprisonment.

Gerlach has been the Grady County Jail Administrator since May 26, 2014. As jail administrator, Gerlach is "authorized and directed to have charge of the Grady County Jail and of all persons confined by law therein." *See* Gerlach's Aff. [Doc. No. 146-1 at ¶ 3].

Since May 2005, the Grady County Jail and the U.S. Department of Justice United States Marshals Service Prisoner Operations Division have maintained a Detention Services Intergovernmental Agreement. Pursuant to the agreement, the Grady County Jail is responsible for providing secure custody, safekeeping, housing, subsistence and care of federal detainees. The level and range of care provided to federal detainees must be the same as that provided to state and local detainees.

Eric Forsythe is the liaison between the Grady County Jail and the federal government regarding the housing of federal detainees. When a federal detainee is brought to the Grady County Jail, "they are processed, and asked about their faith, any medical issues, among numerous other questions." Gerlach's Aff. [Doc. No. 146-1 at ¶ 7]; Forsythe's Aff. [Doc. No. 146-3 at ¶ 4].

Before his transport to the Grady County Jail, Plaintiff was housed in several different federal facilities. He arrived at the Grady County Jail at night on February 10,

2015. He was kept in the gymnasium for about four hours until he could be processed. This is standard procedure for new arrivals. Plaintiff did not ask for anything to eat during those four hours.

During the book-in process, Plaintiff told jailer Mike Fitzpatrick that he is Jewish, and Plaintiff's book-in sheet references "Jewish" under Religion. [Doc. No. 146-4]. Mr. Fitzpatrick also noted on the book-in sheet that Plaintiff kept "kosher," but Mr. Fitzpatrick inadvertently placed the kosher reference under "Food Allergies" on the book-in sheet. *See Id.*

When a federal detainee has an issue or concern at the Grady County Jail, they are required to fill out a Federal Detainee's Request for Services, which is then provided to Forsythe. Forsythe will generally respond to the request as soon as practicable. Sometime prior to February 14, 2015, Forsythe received paperwork from Plaintiff regarding his request to use the prayer materials contained in his property box.

On February 14, 2015, Forsythe met with Plaintiff. Plaintiff and Forsythe discussed the fact that Plaintiff had not been receiving kosher meals, and Forsythe corrected the information on Plaintiff's book-in sheet.

Gerlach asserts that thereafter Plaintiff was served kosher meals. Plaintiff denies that he was served kosher meals.

## DISCUSSION

A.  **Sincerity of Religious Beliefs**

"Whether religious beliefs are sincerely held is a question of fact." *Mosier v. Maynard*, 937 F.2d 1521, 1526 (10th Cir. 1991). The Court previously held that questions of fact precluded summary judgment on this threshold issue [Doc. No. 125 at 13-14], and Gerlach has not come forth with any new evidence to show otherwise.

Once again, Gerlach relies solely on Plaintiff's familial history, countries where Plaintiff lived prior to his incarceration, and Plaintiff's "assumed identities" prior to his incarceration as undisputed evidence that Plaintiff's beliefs are not sincerely held. Gerlach does not address Plaintiff's conduct since incarceration. *See Beerheide v. Suthers*, 82 F. Supp. 2d 1190, 1194-1195 (D. Colo. 2000), *aff'd*, 286 F.3d 1179 (10th Cir. 2002) (although the prisoner was not raised in the Jewish faith and only began studying Judaism during his incarceration, his religious belief was sincere where he prayed on a regular basis and desired to follow a kosher diet); *Maguire v. Wilkinson,* 405 F. Supp. 637, 640 (D. Conn. 1975) (fact that claimed religious belief was not held prior to incarceration cannot automatically lead to the conclusion that the religious belief is not genuine).

The record is devoid of any evidence that any prison official at the Grady County Jail or in the BOP questioned the sincerity of Plaintiff's beliefs. Plaintiff testified during his deposition that he received kosher meals "since Day 1" while incarcerated in the BOP. [Doc. No. 89-5 at 20]. Upon his arrival at the Grady County Jail, he notified prison officials that he kept "kosher." Gerlach's Aff. [Doc. No. 146-1 at ¶ 11]; Forsythe's Aff. [Doc. No.

146-3 at ¶ 8]. Plaintiff also indicated in his deposition that he refused to eat the meals provided to him at the Grady County Jail due to his religious beliefs because the meals were not kosher. [Doc. No. 89-5 at 28]. The Offender Incident Report confirms Plaintiff refused his tray on February 21, 2015. [Doc. No. 146-10]. Moreover, Plaintiff requested to use his prayer materials and his request was granted. Forsythe's Aff. [Doc. No. 146-3 at ¶¶ 12-16]; *see also* [Doc. No. 146-10].

At its core, Gerlach's challenge to the sincerity of Plaintiff's beliefs rests on credibility, which cannot be determined on summary judgment. *Kay v. Bemis*, 500 F.3d 1214, 1219 (10th Cir. 2007).

### B.  Substantial Burden on Religious Practices

Gerlach asserts that no substantial burden was placed on Plaintiff's religious practices. The Court disagrees. On the present record, factual questions remain concerning whether the meals provided to Plaintiff were kosher, precluding summary judgment.

Plaintiff specifically challenges the manner in which the meals were prepared and served on site at the Grady County Jail. [Doc. No. 148 at ¶¶ 1(e)-(h), 5]; *see also* Compl. [Doc. No. 1 at ¶¶ 26, 30]; [Doc. No. 100 at 3-4].[6] Still lacking from the evidence of record

---

[6] Plaintiff alleges that the food provided to him by the Grady County Jail "was prepared in their UNLICENSED and UNCERTIFIED, NON-KOSHER kitchen; thus, it is not kosher." [Doc. No. 148 at ¶ 1(e)] (emphasis in original). He further alleges that the meals given to him were "clearly packed by the kitchen [s]taff of [the] Grady County Jail, it was not sealed, and it did not bear any known 'Kosher Certification,' nor was it marked by the seal of any Rabbinic Authority." Compl. [Doc. No. 1 at ¶ 26]. Additionally, he contends that the "Grady County Jail Service is not certified to prepare nor serve 'Kosher Food,' and Grady County Jail kitchen staff are neither certified by an acceptable 'Kashrut' authority, nor supervised by any nationally recognized Kasherut Supervision Service." *Id.* at ¶ 30.

8

is an affidavit from the Grady County Jail Food Services Director during the time Plaintiff was incarcerated at the Grady County Jail. Gerlach's submission of an affidavit from Laura Donnelly, West Region Dietitian for Trinity Services Group, Inc. ("Trinity"), does not change this fact. Donnelly's Aff. [Doc. No. 146-25]. Donnelly did not work on site at the jail. Leslie Rico's affidavit is not helpful either.[7] Rico's Aff. [Doc. No. 146-11]. She did not become the Food Services Director until March 2015, after Plaintiff was no longer incarcerated at the Grady County Jail.

Donnelly asserts that she created the kosher diet for the Grady County Jail and that in February 2015 the Grady County Jail "was implementing the Kosher diets that [she] created." Donnelly's Aff. [Doc. No. 146-25 at ¶ 6]. Donnelly asserts that she provided the Grady County Jail with a Weekly Cycle Menu of Kosher Meal Plans. [Doc. No. 146-25]. The Weekly Cycle Menu created by Donnelly is dated October 2014 and sets forth special cooking instructions for kosher meals and approved substitutions. [Doc. No. 146-25 at 4-5].[8] There is no evidence of record that Donnelly's instructions or meal plans were

---

He alleges that the jail lacks a "SEPARATE KOSHER AREA." [Doc. No. 100 at 3] (emphasis in original).

[7] Nor would Rico's testimony be admissible at trial, as she lacks personal knowledge of the facts in her affidavit, as evidenced *infra*. *See* FED. R. CIV. P. 56(c)(4) (supporting and opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *see also* FED. R. EVID. 602. Both Gerlach and Rico assert that the Food Services Director prior to Rico was employed by Trinity and worked on site at the jail overseeing preparation and cooking of kosher meals. Gerlach's Aff. [Doc. No. 146-1 at ¶ 22]; Rico's Aff. [Doc. No. 146-11 at ¶ 4]. Curiously, neither identify this person by name.

[8] The instructions include: (1) use only special kosher cookware, knives, and serving utensils to maintain kosher status; (2) all vegetables are to be prepared fresh and washed

followed by the Grady County Jail. In other words, there is no affidavit from the Food Services Director at the Grady County Jail in February 2015 verifying that she or he followed the specific instructions and meal plans created by Donnelly.

Donnelly further asserts that the Grady County Jail used products supplied by GFI-Global Food Industries, Inc. ("GFI-Global"), to cook its kosher food. Donnelly's Aff. [Doc. No. 146-25 at ¶ 7]. According to Donnelly, Rabbi N. Greenblatt certified that the products produced by GFI-Global conformed to Jewish Dietary Laws. *Id.* at ¶ 8. His certification is attached to Donnelly's Affidavit. [Doc. No. 146-25 at 6-7]. Although the certification indicates it is valid until January 31, 2016, it is not dated. Thus, it is unclear what time period the certification covers. Further, Greenblatt's ordination and credentials are not a part of the record.

Leslie Rico became the Food Services Director at the Grady County Jail in March 2015. Before attaining this position, she worked in some capacity[9] at the jail for five years. Rico asserts that prior to March 2015 kosher meals were sold to the jail through Trinity from a company called My Own Meals, Inc. Rico's Aff. [Doc. No. 146-11 at ¶ 10]. This

---

with only approved tools; (3) cook food on designated kosher cookware only; (4) serve all items with approved kosher utensils; and (5) designated kosher utensils must be washed and stored separately from other cookware. [Doc. No. 146-25 at 4-5].

[9] Rico states that she was "working at the facility during the entire time that Richard Chichakli was housed at the Grady County Jail," but she does not state in what capacity she was working at the facility. Rico's Aff. [Doc. No. 146-11 at ¶ 3]. Thus, it is not clear that she worked in a capacity related to food services. As such, the summary judgment record fails to establish that she has personal knowledge of the facts alleged in her affidavit.

differs from Donnelly's assertion that GFI-Global supplied the products for the kosher meals.

Further, the 12 undated photographs[10] attached to Gerlach's motion, which were also attached to his first motion for summary judgment and challenged by Plaintiff [Doc. No. 100 at 3], depict the names of different manufacturing and/or distribution companies[11] – none of which are My Own Meals, Inc., or GFI-Global. [Doc. No. 146-9]. Gerlach fails to identify the relationship, if any, between GFI-Global, My Own Meals, Inc., and the companies identified on the food labels in the photographs. Similarly, Gerlach does not provide any evidence that the packaged food depicted in the photographs is provided through Trinity.

Kosher food can lose its kosher status through the production and preparation process. "The laws of kosher address a comprehensive dietary system – including not only the types of foods that may be eaten, but also the preparation requirements, which ensure kosher ingredients are not 'contaminated' by non-kosher ingredients." *Willis v. Comm'r, Indiana Dep't of Corr.*, 753 F. Supp. 2d 768, 771 (S.D. Ind. 2010). "[O]ne fundamental tenet is non-contamination of kosher food products with non-kosher products during and

---

[10] Although Rico does not state when the photographs were taken or by whom, it appears from her affidavit that they were taken during her tenure as Food Services Director. Rico's Aff. [Doc. No. 146-11 at ¶ 9]. Thus, there is no evidence before the Court that the food depicted in the photographs is the same as that served during Plaintiff's period of incarceration at the Grady County Jail.

[11] The companies include LaBriute Meals, located in Lakewood, New Jersey; Tova Industries, LLC, located in Louisville, Kentucky; Food Concepts, located in Lebanon, Tennessee; and Meal Mart, located in Maspeth, New York.

after preparation – as such, kosher food must be carefully supervised through the phases of production." *Id.* There is no evidence of record that the alleged kosher food was carefully supervised during preparation on site at the Grady County Jail.

The record includes a rabbinic opinion of Rabbi Y. Weiss of The Aleph Institute[12] [Doc. No. 49] as to what constitutes kosher food acceptable in the prison environment. According to Rabbi Weiss, "[T]he preparation and cooking of the food also matters." [Doc. No. 149 at 3]. "The food must only be prepared and cooked with utensils and ovens only used for Kosher … [T]o ensure the kitchen is Kosher, there is supposed to be a rabbi present in the kitchen supervising at all times to watch and make sure the food is Kosher according to Jewish law." *Id.* Rabbi Weiss recognizes that having fulltime rabbinic supervision is obviously not always possible or practical in a jail facility. *Id.* Thus, most jails offer pre-packaged kosher meals. *Id.* Those meals are cooked and prepared in kosher kitchens with rabbinic supervision. They come double-sealed and can be warmed in any microwave or oven "as long as the double seal remains intact and is not broken." *Id.*

The parties do not dispute the manner in which the meals were served to Plaintiff, i.e., the food was placed on Styrofoam plates and wrapped in cellophane. Compl. [Doc. No. 1 at ¶ 25]. The food was not served in any pre-packaged container that bore a certified insignia. Gerlach's Aff. [Doc. No. 146-1 at ¶ 26]; Compl. [Doc. No. 1 at ¶ 26]. Indeed, Gerlach acknowledged that kosher meals are usually "on a Styrofoam plate, with

---

[12] "The Aleph Institute assists Jewish prisoners with, among other things, kosher food issues." *Nelson v. Walsh*, Case No. CIV-16-10405, 2017 WL 1212836, at *5, n. 8 (E.D. Mich. Feb. 17, 2017) (unpublished) (*citing* http://www.aleph-institute.org/prisoner-services.html).

12

Styrofoam cups and cellophane wrap" and "do not necessarily have the Kosher certification symbols directly on the meal that the inmate would see." Gerlach's Aff. [Doc. No. 146-1 at ¶ 26]. There is no evidence of record explaining how the pre-packaged meal ended up on a Styrofoam plate wrapped in cellophane or whether it maintained its kosher status. There is no evidence of record from anyone at the jail who would have supervised or participated in this process.

A female inmate at the jail during the same time as Plaintiff and who identified herself as Jewish had similar complaints about the food not being kosher. [Doc. No. 146-20]. She complained to the medical unit that she could not eat off the "unclean plate [and] cups" on which her food was served and that she could not eat the food "cooked in [the jail's] unclean pots." [Doc. No. 146-20]. Further, Plaintiff alleges that the food served to him was identical to the food served to inmates who were not on a kosher diet. Compl. [Doc. No. 1 at ¶ 25]; [Doc. No. 89-5].

Consistent with Weiss' opinion, the Tenth Circuit has recognized that "[k]osher laws govern not only the ingredients (both animal and vegetable), but the source, storage, and preparation of those ingredients, and the service of meals." *Beerheide v. Suthers*, 286 F.3d 1179, 1187 (10th Cir. 2002). Thus, a "vegetarian meal prepared in a non-kosher kitchen is not kosher." *Id.* The Tenth Circuit has noted that "kosher" covers a broad spectrum of interpretation. *Searles v. Dechant*, 393 F.3d 1126, 1131 n. 6 (10th Cir. 2004) (noting that even when all residue of a non-kosher product has been removed from a cooking utensil, the aroma and taste variation can remain in the equipment and affect the subsequent kosher product).

In summary, Plaintiff specifically challenges the manner in which the meals were prepared and served on site at the Grady County Jail. There is no evidence of record to show any onsite visits of the jail's kitchen by a rabbi. The rabbi certification provided by Donnelly is undated, and the rabbi's credentials are not a part of the record. There is no evidence of record concerning the unnamed Food Services Director at the Grady County Jail in February 2015 or any evidence he or she followed Donnelly's instructions and meal plans. Further, there is no evidence of record from anyone else who worked in the kitchen under the supervision of this unnamed Food Services Director, which addresses the following questions: (1) who worked in the kitchen; and (2) were they trained on the preparation and service of kosher food.

Both Gerlach and Rico assert that this unnamed Food Services Director was employed by Trinity. There is no evidence of record that Trinity conducted random, unannounced visits at the jail to ensure that the food was being prepared and served in a manner to maintain its kosher status. Donnelly does not even reference a Food Services Director employed by Trinity or one working on site at the jail in February 2015. Moreover, Donnelly, Gerlach and Rico appear to disagree regarding which company provided the certified kosher products to Trinity or the jail. The 12 undated photographs do nothing to clear up this inconsistency, but rather add more company names to the mix.

Finally, there is no photographic evidence of the kosher meal preparation area at the Grady County Jail, which Plaintiff specifically challenged was not in a separate area within the kitchen. When the record is viewed in the light most favorable to Plaintiff, questions of fact exist which preclude summary judgment.

### C. Exhaustion of Administrative Remedies

Gerlach presents the affirmative defense that Plaintiff did not exhaust his administrative remedies. Gerlach raised this argument in his First Motion for Summary Judgment [Doc. No. 89]. The Court rejected the argument and denied Gerlach's motion on this basis. [Doc. No. 125 at 5-12]. Without any new authority or new facts, Gerlach's assertion is subject to the same legal conclusion previously reached by this Court. Thus, the exhaustion requirement in 42 U.S.C. § 1997e(e) is not a roadblock to Plaintiff's claims.

### D. PLRA's Limitation on Recovery

Gerlach contends that without any evidence of physical injury Plaintiff cannot maintain an action under the PLRA. Gerlach raised this argument in his First Motion for Summary Judgment [Doc. No. 89]. The Court rejected it. [Doc. No. 125 at 12]. Thus, without any new authority, Gerlach's assertion is subject to the same legal conclusion previously reached by this Court.

### E. Unconstitutional Policy or Custom

Gerlach asserts that he is not a proper party to this action, but rather the Grady County Criminal Justice Authority, a Title 60 trust, is the appropriate party. This argument has been raised by Defendant Mike Lennier several times, and the Court has rejected it. [Doc. No. 126 at 23]. Gerlach presents no additional authority or facts. Thus, the Court also rejects it here.

Gerlach further contends that Plaintiff has failed to show that there is any unconstitutional policy or custom at issue. Gerlach raised this argument in his First Motion for Summary Judgment [Doc. No. 89], and the Court rejected it [Doc. No. 125 at 17-19].

Further, he does not assert any new authority or any additional undisputed material facts in his favor. Because fact questions remain concerning whether the meals served to Plaintiff were kosher, any determination regarding an unconstitutional policy is premature. Accordingly, the Court denies summary judgment.

**CONCLUSION**

Gerlach's Second Motion for Summary Judgment [Doc. No. 146] is DENIED as set forth herein.

IT IS SO ORDERED this 9th day of July 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE